UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JUDITH STECKELBERG and<br>MICHAEL STECKELBERG,<br>Parents on behalf of their minor child, AMS,<br><br>Petitioners/Appellees,<br><br>vs.<br><br>CHAMBERLAIN SCHOOL DISTRICT,<br><br>Respondent/Appellant. | 4:21-CV-4147-LLP<br><br>MEMORANDUM OPINION AND ORDER |

An administrative hearing examiner ("Hearing Examiner") ordered the Chamberlain School District ("School District") to reimburse AMS's parents, Judith and Michael Steckelberg ("parents" or "Steckelbergs"), for private tuition and travel expenses after finding that the School District failed to offer AMS a free appropriate public education ("FAPE"), and that the private placement was proper. The School District seeks judicial review and reversal of the Hearing Examiner's Decision. The administrative record is voluminous, containing thousands of pages of documents in addition to the complete transcript of the administrative hearing and the parties' hearing exhibits. The parties have fully briefed the issues. After careful review and consideration of all filings, the Decision of the Hearing Examiner in favor of the Steckelbergs is affirmed.[1]

## BACKGROUND

AMS was a special education student at Chamberlain High School in Chamberlain, South Dakota. He had several medical diagnoses, including autoimmune disorder, PANS/PANDA, Obsessive Compulsive Disorder, Tourette's and random tic disorders. AMS's symptoms prevented him from sitting still in the classroom, paying attention to his teachers, and sometimes from

---

[1] The Hearing Examiner's written opinion will be referred to as "Decision." The hearing transcript will be referred to as "HT."

learning the information being taught. Due to his medical conditions, it was difficult for AMS to control his behaviors, some of which were unacceptable in society and especially in a school setting, including inappropriate language and sexual behaviors.

The Steckelbergs grew frustrated with the education the School District was providing to AMS. Their first Due Process Complaint was filed with the South Dakota Office of Hearing Examiners in January of 2019. The Fourth Amended Due Process Complaint was filed August 30, 2019. In that Complaint, the Steckelbergs alleged that AMS's placement at the Kaizen Academy in Utah for therapy and a standard education should be paid for by the School District under the Individuals with Disabilities in Education Act ("IDEA"). An administrative hearing was held from February 22 through February 26, 2021.[2] Eighteen witnesses testified at the hearing. On July 8, 2021, the Hearing Examiner issued a Decision, concluding:

> The Petitioner has met their burden of proof as to five of the six issues. Respondent failed to adequately develop an IEP [Individual Education Plan] for the 2018-2019 school year. Respondent did not develop an IEP for AMS for the 2019-2020 school year. Respondent did not follow the 2018-2019 IEP and failed to provide a FAPE [Free Appropriate Public Education] to AMS. Respondent did not place AMS with any private school placement or make any plans for AMS to receive an education at home with supports for the 2019-2020 school year. Respondent did not acknowledge or respond to Petitioners Notice of Placement when Petitioner placed AMS in Kaizen Academy.
>
> Petitioners are entitled to receive reimbursement for tuition and fees spent with Kaizen Academy, in the amount of $90,375. I am also ordering reimbursement to Petitioners for the amount of $11,686 for travel for Petitioners and AMS to and from Utah on six (6) different occasions.

(Doc. 10-2, p. 20.)

On July 19, 2021, Notice of Entry of the Decision was served and filed by the Steckelbergs' lawyer. On August 6, 2021, the School District filed a Notice of Appeal in state circuit court. On August 23, 2021, the Steckelbergs filed a Notice of Removal in this Court. (Doc. 1.)

The School District asks the Court to reverse the administrative Decision requiring it to pay for travel expenses and AMS's placement at the Kaizen Academy. The School District's main argument is that the focus of the Kaizen Academy is on counseling and treatment of sexual

---

[2] At the time of the hearing, AMS was 19 years old. He had graduated from high school and was attending college at South Dakota State University ("SDSU").

2

dysfunction rather than education, and thus it was not a proper placement for AMS under the IDEA.

## FACTS

The facts are taken primarily from the Hearing Examiner's Decision which is to be given due weight by this Court. With the exception of Findings of Fact 40 and 41, the facts as found by the Hearing Examiner are mostly undisputed.[3] Additional facts are taken from the administrative record, which is largely undisputed.

AMS was born in 2002. He was an active child, involved in many activities with friends and family both inside and outside of school. In 2013, when AMS was in fifth grade, he had a sudden onset of unusual physical and behavioral conditions. He would move his mouth as if talking but there was no sound, he constantly walked around, exhibited tics, and he could not focus or pay attention. At first the cause of these conditions was unknown. In 2014, AMS was diagnosed with a condition named Pediatric Acute Onset Neuropsychiatric Syndrome ("PANS" or "PANDAS"). This neuropsychiatric syndrome follows an infection in the body such as strep throat, and the subsequent inflammation affects brain function. (HT, pp. 63-64.) AMS's condition was so severe that he was unable to complete fifth grade, and he missed all of sixth grade and half of seventh grade. AMS was hospitalized at Avera Behavioral Health in Sioux Falls, South Dakota on several occasions in 2013 and 2014. Dr. Scott Schneider, a psychiatrist at Avera Behavioral Health, treated AMS. Exhibit 81 contains copies of three letters from Dr. Schneider, one written in 2015 and two written in 2018, discussing the nature and severity of AMS's disorder and "how it impacts his academic and social functioning." These letters were shared with the School District.

Over the years, the Steckelbergs sought medical and psychiatric help for AMS's condition in Arizona, Wisconsin, Minnesota, Nebraska, New Jersey, and at Duke University.

In November of 2015, when AMS was in eighth grade, Valerie Johnson ("Johnson") conducted an in-depth psychoeducational evaluation of AMS on behalf of the School District. (HT, pp.129-134.) The Steckelbergs hoped to get an education plan in place so AMS could

---

[3] In its brief, the School District said it was unaware of the basis for the Hearing Examiner's Finding of Fact 6 which states that "AMS' learning disability is reading comprehension." Valerie Johnson, the School District's special education director, testified that she conducted an evaluation of AMS and determined that he had a learning disability in the area of reading comprehension which made him eligible for special education services. (HT, p. 134.)

3

succeed when he started high school the following school year. Johnson concluded that AMS qualified for special education for reading comprehension and for services under "Other Health Impaired," making AMS eligible for special education and related services. (*Id.* and Exhibit 125.) Johnson made recommendations for addressing AMS's behaviors at school. In a reevaluation conducted in October of 2018, the School District determined that AMS continued to qualify for special education services under "Other Health Impaired."

AMS first got on an Individual Education Plan ("IEP") in 2015.[4] His final IEP began on October 27, 2018 and expired on October 21, 2019.

AMS's IEPs from November of 2017 and October of 2018 list counseling services as "related services." Dr. Matthew Christiansen, a clinical psychologist located in Mitchell, began treating AMS in 2017 and was still treating him at the time of the hearing in 2021. While he was in high school in Chamberlain, the School District paid for a one-hour weekly appointment for AMS to see Dr. Christiansen as part of the "related services." In his testimony at the hearing, Dr. Christiansen described PANS as "a pediatric acute onset neuropsychiatric syndrome, which follows some kind of infection, and then the brain has inflammation that results in a number of psychiatric and behavioral problems." (HT, p. 63.) Dr. Christiansen said that PANS caused AMS to suffer symptoms including "ADHD, tic disorder, psychosis, obsessive compulsive disorder." (*Id.* at 65.) According to Dr. Christiansen, these conditions interfere with AMS's ability to learn because "if his mind is somewhere else with an obsession or psychotic experience, he's not going to be able to attend to the information in front of him to be able to learn it." (*Id.*) These conditions also resulted in unacceptable behaviors which AMS exhibited by, for example, shouting, swearing, not following rules, and cheating (i.e. using Google to look up answers to questions).

In 2016, a board-certified behavioral analyst hired by the School District, Dr. Pamela Osnes, performed a Functional Behavior Assessment of AMS. Later, in February of 2018, Dr. Osnes developed two separate documents for AMS: a behavior support plan and a behavior contract. At the hearing, Dr. Osnes explained the importance of a behavior support plan ("BSP") to AMS's success at school:

---

[4] The IEP is a written document that is meant to set out the child's present educational performance, establish short and long term goals for improvement, and describe the specially designed services available to the child to help them achieve these goals. 20 U.S.C. § 1414(d); *Honig v. Doe,* 484 U.S. 305, 311 (1988).

> The BSP [behavior support plan] is also the communication tool with his teachers and staff because it contains more of the nuts and bolts of the behavior change process. That's where you can address how you want teachers to interact with him when he's doing what they want him to do in their classrooms. Also that's where you can address how you want teachers or staff to react on the spot when he says inappropriate things, lies, et cetera. Most critically, the BSP outlines and develops the replacement behaviors, those behaviors that [AMS] will be exhibiting when he is showing us that he's well-behaved. It's called a support plan because it details how the school personnel will support his developing/emerging appropriate behaviors that will gradually replace the problem behaviors.

(HT, pp. 44-45.)

The behavior support plan developed by Dr. Osnes was submitted to the special education director for the School District, Karla Burke, to AMS's special education teacher, Sandi Goltermann, and to the principal, Rick Pearson.[5] For unknown reasons, the behavior support plan was not shared with AMS's teachers or other members of the IEP team, including the Steckelbergs. The behavior support plan was not attached to the IEP, and it was never implemented.

AMS's inappropriate conduct sometimes was in the form of sexualized conduct. For example, in November of 2017, AMS's special education teacher, Bobbi Larson ("Larson"), witnessed AMS masturbating in her classroom in the presence of a couple other students. (The other students did not appear to see or notice the incident.) Larson reported the incident to the principal and the special education director, but they told her not to inform the Steckelbergs of this incident. Subsequently, in the summer of 2018, AMS had a sexually related incident with a six-year-old girl which resulted in criminal charges against AMS. As a result of the criminal charges, in April 2019 AMS entered a plea of guilty to misdemeanor simple assault in the state court juvenile justice system.

Principal Steckelberg testified that, in August of 2018, he and the special education teachers at the School District started discussing placing AMS outside of the School District because it was not the right fit for AMS. (HT, pp. 392, 404-405.) Principal Steckelberg also testified that the School District could not provide AMS a FAPE. (HT, p. 405.)

---

[5] Rick Pearson was the principal at Chamberlain High School for the 2015-2016, 2016-2017, and 2017-2018 school years. Jeff Steckelberg became the high school principal for the 2018-2019 school year. The record does not reveal any familial ties between Jeff Steckelberg and AMS's family.

On December 14, 2018, Principal Steckelberg sent an email to the parents stating, "I'm at the point where I don't think being at CHS is the right setting for [AMS]." (HT, p. 406.) Steckelbergs filed the initial Due process Complaint against the School District in January of 2019. The IEP team met on January 25, 2019. (AMS's parents were members of his IEP team and one or both of them always attended his IEP meetings.) During the meeting, the Steckelbergs agreed to home placement of AMS, believing that AMS would receive behavioral and educational supports and services at home. On January 25, 2019, the IEP team drafted an amendment to the IEP and changed AMS's placement from school to home. The School District agreed to provide supports and services for home placement.

AMS was to receive his class lectures at home via a software called SWIVEL. AMS was unable to access SWIVEL for much of the semester. Not all of AMS's teachers used SWIVEL for lectures. If used, the teachers recorded with SWIVEL and the videos were supposed to be uploaded to Google Docs. AMS accessed Google Docs for much of the year and then could not access it. There was a communication breakdown between the general education teachers and the special education teachers regarding who would get homework to AMS or upload videos to SWIVEL.

On January 30, 2019, parents requested another IEP meeting to revisit the IEP placement because the home placement was not working. AMS was not getting the instructions or school time that his parents thought he required.

In March 2019, the School District and parents agreed AMS would talk with his teachers via Skype once a week, but that often did not happen. It wasn't until the end of the semester, in May 2019, when Principal Steckelberg told AMS's teachers that Skype was mandatory to communicate with AMS for instruction.

AMS's special education teacher, Sandi Goltermann, and the special education director, Karla Burke, testified at the hearing that the School District was not able to meet AMS's needs and that he did not belong at the School District. (HT, pp. 486, 676.)

Burke also testified that, in September of 2018, the School District began working with the State of South Dakota's Auxiliary Placement Program to find an out-of-district placement for AMS. (HT, p. 486.) The Auxiliary Placement Program "reimburses educational expenses for eligible youth in residential placement." ARSD 67:22:01:01(1). On July 23, 2019, Aurora Plains

Academy, the in-state, Medicaid-certified psychiatric residential treatment facility located in Plankinton, South Dakota, rejected placement of AMS at its facility because of his age.[6] Prior to the 2019-2020 school year, the School District and Auxiliary Placement could not locate a placement for AMS anywhere in the United States that was a treatment center paid for by Medicaid.

In April 2019, parents contacted the School District about some possible out-of-state placements for AMS that parents had located. The list included the Kaizen Academy in Utah. Kaizen is a residential treatment facility. It is not a medical or psychiatric treatment facility. On behalf of the School District, Burke contacted Kaizen to see if AMS might be a fit there, and she thought it was a possibility because of the services offered. Janis Taylor ("Taylor") from the Kaizen Academy testified that the School District sent Taylor documentation in four separate emails and was checking whether Kaizen would be an appropriate placement for AMS. However, the School District learned that Kaizen was not a psychiatric residential facility so it would not be reimbursed with Medicaid funds for any costs associated with AMS's attendance at Kaizen.

Principal Steckelberg testified that, in May of 2019, the School District had no plan on how to provide AMS a FAPE. (HT, p. 429.) The School District did not give any indication to the Steckelbergs as to where AMS would be placed for the 2019-2020 school year (his senior year).

In June 2019, Kaizen accepted AMS. Parents forwarded the acceptance letter to the School District and awaited a response. The School District did not respond. The new special education instructor for the School District, Calico Hunjah, testified that she was told by the superintendent, Dr. Deb Johnson, not to contact the Steckelbergs due to the legal case. (HT, pp. 782-83 and 789.)

On August 8, 2019, the Steckelbergs filed a Notice of Intent to place AMS in an out-of-state facility. The School District did not respond to the Notice of Intent. (The administration did not inform the Special Education office of AMS's placement at Kaizen until October 2019.)

On August 26, 2019, the Steckelbergs unilaterally placed AMS at Kaizen Academy.

Kaizen Academy is a licensed residential facility for male adolescents with problematic sexual behaviors. The enrollment at Kaizen is limited to fifteen or sixteen students at a time. The

---

[6] For placement at Aurora Plains, the child must be no less than nine months from their 18th birthday. AMS was less than nine months from his 18th birthday. (HT, p. 850.)

program at Kaizen involves a half day of classwork and a half day of psychosexual counseling, five days a week. Kaizen residents attend school in an online setting through Alta Independent, a third-party online school. Janis Taylor, the admissions director for Kaizen, testified at the hearing that Kaizen's academic director works with Alta and makes sure that each student's therapeutic and educational supports are met. For example, when AMS cheated or visited inappropriate sites on his computer, the computer was taken away and he received paper packets for instruction. In addition, Alta accommodates Kaizen's requirement that students do not have homework outside of the class time so the evenings can be used to focus on social skills and therapeutic needs. Kaizen uses Alta Independent for the schooling in order to protect the students' privacy by allowing them to obtain a diploma from Alta rather than from an academy for teenage boys with problematic sexual issues. At the administrative hearing, the School District introduced as an exhibit information that it had recovered from Kaizen's website. This is the information that the website provided about Kaizen's academic program:

> The young men at Kaizen Academy attend school in our on-campus classroom with instructional support on campus and oversight provided by certified teachers through our private school ("Alta Independent" school, accredited by AdvancED).
>
> We elect not to use "Kaizen Academy" as the school name to protect the confidentiality of each student on transcripts and diplomas.
>
> When first admitted to Kaizen Academy, each student receives a credit evaluation and testing to evaluate areas of needed improvement. When needed, additional assistance is provided through our special education services and tutors.
>
> Our academic support staff to student ratio is 1 to 3, providing an environment for students to make progress toward educational goals.
>
> We offer a "hybrid" multimedia-rich format for learning that provides the flexibility of online schooling with the benefit of one-on-one and small group instruction. The curriculum is standard for junior and high school; however course work is also individualized to help each student meet graduation requirements. The curriculum is designed for individualized programs that correct academic weaknesses, capitalize on strengths, learning styles and increase self-confidence.
>
> Many students at Kaizen Academy have achieved academic success for the first time in their lives, often creating the spark for a love of learning. Academic opportunities for advanced placement and college classes are also available for youth who are eligible for and interested in post-high-school education.
>
> Core classes offered include (but are not limited to): Pre-algebra, Algebra, Algebra 2, Geometry, Biology, Chemistry, Physics, World History, American

> History, Earth Science, Writing Comprehension, English, Physical Education, Spanish, German, French, and Health.

(Doc. 25-12, p. 18.)

A September 15, 2020, letter from the Executive Director at Kaizen, introduced into evidence at the hearing as Exhibit 50, states:

> Kaizen Academy is a residential treatment center licensed by the state of Utah through The Department of Human Services. Kaizen Academy runs a fully functioning school as part of its program. The school is facilitated online through Alta Independent or Ed Options Academy. These two fully accredited schools provide the curriculum and support from their teachers and aides. Kaizen's school is run by a certified special education teacher who is present in the school to oversee all supports needed for IEP's, academic and transcript planning or any other type of hands on learning and support. In addition, Kaizen also offers a ratio of one teaching aide to every 4 students to offer more in person support to help the students through their academic needs. Kaizen Academy's school schedule is Monday-Friday from 8am-3pm with a break for lunch.

(Doc. 27-1, p. 39 and Exhibit 50.)

Neither Kaizen nor Alta is considered a school district, so Kaizen does not create IEPs for students. Instead, Kaizen works with the student's home school to follow IEP and credit needs. However, on October 7, 2019, School District told Kaizen and the Steckelbergs that they would not update AMS's IEP while he was attending Kaizen. His IEP expired on October 21, 2019.

Reports on AMS's academic and behavioral progress were kept at Kaizen. (Exhibit 92.) AMS successfully completed the credit hours he needed, and he graduated from high school and Kaizen Academy in April 2020, earning all A's and B's in his classes. At the time of the hearing, AMS was attending college at SDSU.

The School District did not pay for AMS to attend Kaizen Academy.

The Hearing Examiner concluded that the School District failed to provide AMS with a FAPE by not developing an IEP for AMS for the 2019-2020 school year.

Concluding that the IEP for the 2018-2019 school year also was inadequate, the Hearing Examiner stated:

> The IEP was not reasonably calculated to enable AMS to progress. The IEP did not allow for continual or gradual progress to be made by AMS. The IEP was

>not reasonable and was missing elements such as benchmarks or measurements of progress, instead of the 100% perfect behaviors immediately. The IEP did not have supports for the general education teachers to measure progress of the behaviors and report back to the special education department. The IEP had minimal postsecondary goals of "researching admission requirements for 3 universities" and "support and follow through on job expectations" while at work.
>
>In January 2019, the amendment to the IEP did not reflect the requirements of how the general education teachers were to use technology to contact AMS for his homework. The accommodations were changed to, "Separate setting for assessments, repeating/simplifying/ Clarifying Directions and Text to Speech for testing and assessments." Despite inclusion in the IEP, no "Text to Speech" was set up for AMS to utilize. No other supports or accommodations were detailed in the amendment. There were no guidelines on how AMS was to receive his education.

(Decision, p. 10.)

The Hearing Examiner also held that the School District violated the IDEA and denied a FAPE to AMS by not following the behavior plan created by Dr. Osnes, and by not having classes taught remotely as planned when AMS was placed at home.

In addition, the Hearing Examiner's Decision includes a detailed analysis of why the School District violated the IDEA and failed to provide a FAPE to AMS by refusing to acknowledge that placement at Kaizen Academy was suitable. "As the evidence shows, the home placement was not working and was not providing a FAPE for AMS. Administration for Respondent knew that AMS could not be placed within the school and the home placement was not working. AMS had to be placed in a facility that treated the behaviors as well as provided an education." (Decision, p. 14.) The Hearing Examiner cited an Eighth Circuit case for the proposition that, in order to be reimbursed for a private residential program, "parents must show that the residential placement is 'educationally necessary,' meaning that it is necessary to address out-of-school behaviors, issues or needs that hinder a student's ability to learn." (Decision, p. 16, citing *Indep. Sch. Dist. No. 284 v. A.C.*, 258 F.3d 769, 774, 777 (8th Cir. 2001)). The Hearing Examiner concluded that "Kaizen treats both the behaviors and the special education required under AMS's most recent assessment." (Decision, p. 16.)

Addressing the School District's argument that Kaizen is more like a court-ordered placement for juvenile delinquents with sexual behaviors and less like a school, the Hearing Examiner stated, "Kaizen is a residential treatment center with strict enforcement rules. It requires all students to attend school and provides access to an education that is appropriate to each

10

student." (Decision, p. 16.) The Hearing Examiner likened AMS's circumstances to those of the special education student in *S.B. v. Murfreesboro City School*, 2016 WL 927441 (M.D. Tenn. March 11, 2016), where the district court found that the student's educational difficulties were not separable from his emotional and behavioral problems, and that the student's residential placement was needed for him to benefit from special education. (Decision, p. 16.)

Kaizen gave the Steckelbergs a special rate of $375 per day instead of the normal rate of $500 per day. The Hearing Examiner ordered the School District to pay the cost of AMS's attendance at Kaizen in the amount of $90,375. The Hearing Examiner also directed the School District to pay $11,686 for the Steckelbergs' travel expenses for six trips to the Kaizen Academy.

The School District seeks judicial review and reversal of the Hearing Examiner's Decision.

## STANDARD OF REVIEW

In a lawsuit filed by the aggrieved party under the IDEA, the district court must review the state administrative record, hear additional evidence (if requested), and "independently determine the appropriate relief based on a preponderance of the evidence, while still giving due weight to the factual findings of the administrative panel." *Fort Osage R-1 Sch. Dist. v. Sims ex rel. B.S.*, 641 F.3d 996, 1002 (8th Cir. 2011), quoting *Hansen ex rel. J.H. v. Republic R–III Sch. Dist.*, 632 F.3d 1024, 1026 (8th Cir. 2011). The district court must give due weight to the factual findings because the hearing examiner had an opportunity to observe the demeanor of the witnesses. *K.E. ex rel. K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d. 795, 803 (8th Cir. 2011). Furthermore, the district court must not substitute its "own notions of sound educational policy for those of the school authorities which they review." *Fort Osage*, 641 F.3d at 1002, quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982). Finally, the burden of proof lies upon the party challenging the hearing examiner's decision, which in this case is the School District. *Minnetonka Pub. Sch., Indep. Sch. Dist. No. 276 v. M.L.K. by and through S.K.*, 42 F.4th 847, 852 (8th Cir. 2022).

## DISCUSSION

States accepting federal funds allocated for the education of students with disabilities are required to provide a "free appropriate public education" – known as a FAPE – to all eligible

children.[7] 20 U.S.C. § 1412(a)(1). If a school district fails to offer a FAPE, a child may be enrolled in an appropriate private school and the school district may be obligated to reimburse parents for private tuition expenses. 20 U.S.C. § 1412(a)(10)(C)(ii). Parents are eligible to receive private tuition reimbursement if two requirements are met: 1) "the school failed to provide a FAPE;" and 2) "the private school is an 'appropriate' placement within the meaning of the IDEA." *Sneitzer v. Iowa Dep't of Educ.*, 796 F.3d 942, 948 (8th Cir. 2015), citing *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 242–43 n. 9 (2009); *Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985).

## A. FAILURE TO PROVIDE A FAPE

The first question, whether a school district provided AMS with a FAPE, is a mixed question of fact and law. *K.E. v. Indep. Sch. Dist.*, 647 F.3d at 804. When reviewing a school district's compliance with the IDEA in providing a FAPE, a district court should engage in a two-part inquiry: 1) whether the school district followed the procedures set forth in the IDEA formulated to create an IEP tailored to meet the disabled child's unique needs; and 2) whether the resulting IEP was "reasonably calculated to enable the child to receive educational benefits." *Id.* at 804. *See also Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. 386, 137 S. Ct. 988, 1002 (2017) (to properly provide a FAPE, the school district must develop an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances"). If the school district has met these requirements, it "has complied with the obligations imposed by Congress and the courts can require no more." *Sch. Bd. of Indep. Sch. Dist. No. 11 v. Renollett*, 440 F.3d 1007, 1011 (8th Cir. 2006), quoting *Rowley*, 458 U.S. at 207.

As explained earlier, the IEP is a written document that sets out the child's present educational performance, establishes short and long term goals for improvement, and describes the specially designed services available to the child to help them achieve these goals. 20 U.S.C. § 1414(d); *Honig v. Doe*, 484 U.S. 305, 311 (1988). The IEP is to be "constructed only after careful consideration of the child's present levels of achievement, disability, and potential for growth." *Endrew F.*, 137 S. Ct. at 999, citing 20 U.S.C. §§ 1414(d)(1)(A)(i)(I)-(IV), (d)(3)(A)(i)-(iv). The IEP must be developed and reviewed annually, 20 U.S.C. § 1414(d)(4)(A)(i), in a manner

---

[7] As defined in the IDEA, a FAPE comprises "special education and related services"—both "instruction" tailored to meet a child's "unique needs" and sufficient "supportive services" to permit the child to benefit from that instruction. 20 U.S.C. §§ 1401(9), (26), (29); *see Rowley*, 458 U.S. at 203.

that is reasonably calculated to enable the child to receive educational benefits. *T.F. v. Special Sch. Dist. of St. Louis Cty.,* 449 F.3d 816, 820 (8th Cir. 2006). Because school officials are responsible for critically important decisions in a disabled child's life, they are expected "to offer a cogent and responsive explanation for their decisions that shows the IEP is reasonably calculated to enable the child to make progress appropriate in light of his circumstances." *Endrew F.,* 137 S. Ct. at 1001–1002.

      Since academic progress alone does not automatically mean a child has received a FAPE, especially if that child has a behavioral disability, the Court must determine whether AMS's IEPs were "responsive to the student's specific disabilities, whether academic or behavioral." *K.E. v. Indep. Sch. Dist.,* 647 F.3d at 809, quoting *CJN v. Minneapolis Pub. Sch.*, 323 F.3d 630, 642 (8th Cir. 2003). "If a behavior impedes a child's learning, the IEP team need only '*consider*, when appropriate, strategies, including positive behavioral interventions, strategies, and supports to address that behavior[.]' " *Lathrop R-II Sch. Dist. v. Gray,* 611 F.3d 419, 425 (8th Cir. 2010), quoting 20 U.S.C. § 1414(d)(3)(B)(i) (emphasis in the original). The witnesses who testified at the administrative hearing agreed that AMS's behaviors impeded his learning.

      The Hearing Examiner provided several reasons for her conclusion that the School District did not provide AMS a FAPE for the 2018-2019 school year. The School District contracted with professionals to create behavioral interventions and strategies, and then it did not use the behavior plan developed by Dr. Osnes, nor did it consider the behavior plan when creating the IEP. As stated earlier, the Hearing Examiner found that the IEP lacked supports for the general education teachers to measure progress and report back to the special education department. Behavioral goals on the IEP required 100% perfect behaviors. The goals were missing benchmarks and measurements of progress. When the IEP was amended for home placement, it did not reflect how the general education teachers were to contact AMS for his homework. In short, "[t]here were no guidelines on how AMS was to receive his education" with home placement. (Decision, p. 10.) Furthermore, the Hearing Examiner highlighted hearing testimony indicating that neither the IEP nor the behavior plan was given to all of AMS's teachers, and "there were no 'supports' within the IEP for all teachers for behaviors." (Decision, p. 13.) The IEP was only given to teachers that had requirements pursuant to the IEP, but "[b]ehavior supports were supposed to be for all teachers that worked with AMS, not just special education teachers. The amended IEP in January 2019

had no supports for teachers for education or behaviors, despite having to teach AMS remotely." (*Id.*)

The Hearing Examiner also held that the School District failed to provide a FAPE to AMS for the 2019-2020 school year by failing to place him in a suitable educational placement. (Decision, p. 14.) The School District knew that AMS could not be placed at the Chamberlain school and knew that the home placement was not working. (*Id.*) The only location in South Dakota that could treat AMS's behaviors and provide him an education rejected placement of AMS because of his age. (*Id.*) No other facilities that Medicaid covered within the United States were a fit. (*Id.*) Simply put, Kaizen Academy was the only placement for AMS, and the School District refused to participate in that placement. (*Id.*)

The School District admits that its briefs before this Court focus more on whether Kaizen was an appropriate placement for AMS and less on the issue whether it denied a FAPE to AMS. (Doc. 25, p. 14.) The School District's main argument regarding the FAPE for AMS is that there was nothing in the Hearing Examiner's Decision indicating what the School District should have done, or should not have done, to address AMS's difficult condition and the behaviors that manifested as a result of the condition. The Steckelbergs point out that the IDEA does not place the burden on parents to show what a school should have done to provide a FAPE. Rather, the IDEA requires schools to provide a FAPE to disabled children.

The Court concludes that the Hearing Examiner's Decision that the School District denied a FAPE to AMS is supported by the evidence in the record.[8] The administrative hearing lasted a week during which both parties were allowed to introduce evidence and present and cross-examine witnesses. Eighteen witnesses testified and hundreds of exhibits were admitted into evidence at the hearing. Sometimes the Hearing Examiner asked questions of witnesses to clarify issues. Following the hearing, the Hearing Examiner allowed the parties to submit closing briefs. The resulting Decision is detailed and contains multiple findings of fact and conclusions of law that show the School District denied a FAPE to AMS. The School District fails to cite any evidence that would justify overturing the Hearing Examiner's conclusion that a FAPE was denied to AMS during the 2018-2019 and 2019-2020 school years.

---

[8] As stated earlier, this Court must give due weight to the factual findings because the Hearing Examiner had an opportunity to observe the demeanor of the witnesses. *K.E. v. Indep. Sch. Dist.*, 647 F.3d. at 803.

The Court finds instructive the Eighth Circuit's decision in *Neosho R-V Sch. Dist. v. Clark*, 315 F.3d 1022 (8th Cir. 2003). There, the challenged IEP plan did not have a cohesive behavior management plan in place. Rather, it simply had attachments that "were merely short-term goals and objectives that did not provide specific interventions and strategies to manage [the student's] behavior problems." *Id.* at 1025. The Eighth Circuit concluded that the district court was correct in finding that the IEP team had failed to adopt or implement anything that would be "sufficient to amount to a cohesive behavior management plan." *Id.* at 1029; *see also K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d at 810 (analyzing *Neosho*). Furthermore, the Court held that the IEPs were deficient because any educational benefit that the child did receive was then "lost due to [the] behavior problems that went unchecked." *Neosho*, 315 F.3d at 1029; *K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d at 810.

What happened in *Neosho* is similar to the situation here. The evidence presented to the Hearing Examiner shows that, particularly beginning with the 2018-2019 school year, AMS was not subject to continuing observations and evaluations by his teachers, the IEP lacked strategies and interventions designed with specific positive behavior goals, and behavior and education goals were not implemented continuously with AMS.

For these reasons, the Court affirms the Hearing Examiner's decision that the School District denied a FAPE to AMS.

## B. WHETHER KAIZEN ACADEMY WAS A PROPER PRIVATE PLACEMENT

The second requirement for reimbursement for private placement is that the private placement must be proper within the meaning of the IDEA. The Eighth Circuit has explained what it takes to prove that an out-of-district placement is "proper" under the IDEA:

> To show an alternative placement is "proper" within the meaning of the IDEA, parents need not show the placement meets state education standards. See *id.*, 510 U.S. at 14, 114 S.Ct. 361. Thus, an alternative placement need not provide certified special education teachers, offer an IEP for the disabled child, *see id.*, or satisfy the least-restrictive environment requirement, *see C.B.*, 636 F.3d at 991. In fact, to be "proper" under the IDEA, the placement need only be "reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 207, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *see also Carter*, 510 U.S at 11, 114 S.Ct. 361; 20 U.S.C. § 1401(29) (defining "special education" as "specially designed instruction . . . to meet the unique needs of a child with disability"). Accordingly, to qualify for reimbursement under the IDEA, parents need only demonstrate the alternative placement provides "educational instruction specially designed to meet

> the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *Rowley,* 458 U.S. at 188–89, 102 S.Ct. 3034 (internal quotation marks and citation omitted).

*T.B. ex rel. W.B. v. St. Joseph Sch. Dist.*, 677 F.3d 844, 847–48 (8th Cir. 2012).

Applying this standard, the Court agrees with the Hearing Examiner's conclusion that AMS's placement at Kaizen was necessary for AMS to receive a FAPE. As noted by the Hearing Examiner, the failure of the IEP for 2018-2019 caused the Steckelbergs to seek alternative placements for 2019-2020, which the School District agreed should occur because it was unable to accommodate AMS. AMS's parents and the School District researched possible placements. The Steckelbergs found Kaizen Academy through an internet search. Subsequently, the Steckelbergs and the School District researched Kaizen. Other than Kaizen, neither the Steckelbergs nor the School District found any other options for placement of AMS.

In fact, in May of 2019, the School District had no plan for providing AMS a FAPE. Yet the School District did not give any indication to the Steckelbergs as to where AMS would be placed for the 2019-2020 school year (his senior year).

In June 2019, Kaizen accepted AMS. Parents forwarded the acceptance letter to the School District and awaited a response. The new special education instructor for the School District, Calico Hunjah, testified that she was told by the superintendent, Dr. Deb Johnson, not to contact the parents due to the legal case. The Steckelbergs heard nothing from the School District.

On August 8, 2019, the Steckelbergs gave notice to School District that they would send AMS to Kaizen if there was no other alternative. Again, they received no response from the School District.

The Steckelbergs unilaterally placed AMS at Kaizen Academy on August 26, 2019. The School District's administration did not inform the Special Education office of the placement until October 2019. Then, the October IEP meeting for AMS was canceled by the School District, and a new IEP was not prepared when AMS's IEP expired in October of 2019.

Although AMS had some behavioral problems when he first started at Kaizen, by all accounts he began to achieve success there.[9] He took courses in 12th grade English, government, algebra 2, environmental science, intro to art, art foundation, drawing, healthy living, lifetime fitness, study skills and educational career planning. (HT, p. 164.) AMS earned all A's and B's in his classes at Kaizen. (Exhibit 92.) The Eighth Circuit has found that making academic progress is a significant factor in determining an appropriate placement. *See CJN v. Minneapolis Pub. Sch.*, 323 F.3d at 642 ("[T]he fact that [a student] is learning is significant evidence that [their] behavioral problems have . . . been attended to."). Dr. Christiansen testified that AMS had "significant" improvements after attending Kaizen (HT, p. 82), and he upgraded AMS's prognosis from "guarded" to "fair." (HT, pp. 109-110, 119.) AMS graduated from Kaizen and Alta Independent, and he went on to college at SDSU.

The School District argues that the Kaizen placement was improper because the primary function of Kaizen is to treat sexual issues and AMS's placement there was not tied to his need for an education. However, the undisputed facts demonstrate that AMS's placement at Kaizen was proper under the IDEA. AMS's placement at Kaizen allowed him to receive the assistance necessary to permit him to benefit from the academic instruction – something that the School District admitted it was unable to provide. All evidence points to the conclusion that Kaizen was "proper" within the meaning of the IDEA.

The Hearing Examiner's Decision explains why placement at Kaizen was proper.[10] On page 14 of the Decision, the Hearing Examiner wrote that "AMS had to be placed in a facility that

---

[9] When AMS first arrived at Kaizen, he cheated, was disruptive, rubbed himself, made threats to others, and threatened to run away. (HT, pp. 159, 161.)

[10] The Hearing Examiner's use of the phrase "inextricably intertwined" in Conclusion of Law 7 to describe how AMS's medical, social, or emotional problems (symptoms of AMS's PANS and other medical diagnoses) are not segregable from his learning process and education does not mean that the Hearing Examiner applied the wrong test to determine that Kaizen was a proper placement. The School District argues that the Hearing Examiner erred because the "inextricably intertwined" test or theory has never been adopted by the Eighth Circuit for use in determining if a private placement is proper under the IDEA. It is true that some circuit courts have created tests (including the "inextricably intertwined" test) to determine whether a residential placement is reimbursable. The Fifth Circuit reviewed two of those tests (from the Third and Seventh Circuits), and then developed a test of its own in *Richardson Indep. Sch. Dist. v. Michael Z*, 580 F.3d 286 (5th Cir. 2009). The Eighth Circuit has not ruled precisely how courts should determine whether a residential placement is "reasonably calculated to enable the child to receive educational benefits." *T.B. ex rel. W.B. v. St. Joseph Sch. Dist.*, 677 F.3d at 847. As accurately described by the School District, the Eighth Circuit "seems to have weighed the various factors on both sides of the issue, and decided the matter on a case-by-case basis." (Doc. 33, p. 17.) As discussed above, all of the evidence, considered together, shows by a preponderance of the evidence that AMS's placement at Kaizen enabled him to receive

17

treated the behaviors as well as provide an education." (Decision, p. 14). On page 15 of the Decision, the Hearing Examiner quoted a regulation providing that a school system must pay for private placement only if "the private placement is appropriate." (Decision, p. 15, quoting 34 C.F.R. § 300.148(c)). On page 16 of the Decision, the Hearing Examiner said that "Kaizen was a reasonable alternative for AMS." On page 17, the Hearing Examiner quoted from the United States Supreme Court's decision in *Florence Cty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 12–13 (1993), where the Supreme Court held a school district must pay for a student's placement at a private facility if "1) the school district's IEP was inappropriate under IDEA and 2) the [private placement] . . . provided an education otherwise proper under IDEA." (Decision, p. 17.) After quoting *Florence County*, the Hearing Examiner continued: "That is the situation at hand." (*Id.*)

The IDEA required the School District to offer a program "reasonably calculated to enable [AMS] to receive educational benefits." *Rowley*, 458 U.S. at 207. The Hearing Examiner found that AMS's placement at Kaizen was reasonably calculated to enable AMS to receive educational benefits, and that the behavioral treatment at Kaizen enabled AMS to benefit from Kaizen's academic program. It is clear from the record that AMS's behavior problems were not being addressed at the School District. It is also clear from the evidence that the staff at the School District was not equipped to successfully address AMS's behavior problems. The School District's teachers and administrators who testified at the hearing agreed that AMS was unable to make progress at school and that out-of-district placement of AMS was necessary.

The School District asserts that placement at Kaizen was not necessary to provide a FAPE to AMS because Kaizen's primary function was to treat sexual behaviors and not for school. But the School District has never identified an alternative placement of any kind, and Kaizen was the only program supported by any evidence in the record that could have provided AMS with an education that met his unique needs.

The Court concludes that the Hearing Examiner properly weighed and considered the evidence and the credibility of the witnesses who testified at the hearing. The appropriateness of AMS's placement at Kaizen, considering his academic and behavioral needs, is supported by a

---

educational benefits, and that the treatment of his social and emotional problems enabled him to obtain an education at Kaizen.

preponderance of the evidence and is consistent with the IDEA. The School District has failed to carry its burden to demonstrate otherwise.

For all of these reasons, AMS's parents acted appropriately in unilaterally placing AMS at Kaizen, and they have a right to reimbursement under the IDEA pursuant to 20 U.S.C. § 1412(a)(10)(c)(ii). The award "furthers the purposes of the Act." *C.B. ex rel. B.B. v. Special Sch. Dist. No. 1, Minneapolis, Minn.*, 636 F.3d 981, 991 (8th Cir. 2011) (internal citations and quotations omitted).

## C. REIMBURSEMENT

Upon review of an administrative decision in an IDEA case, the Eighth Circuit has left the scope of relief to the district court's "broad discretion." *Peter v. Wedl,* 155 F.3d 992, 1001 (8th Cir.1998), citing *Florence County v. Carter*, 510 U.S. at 15-16. The Supreme Court in *Florence County* provides additional guidance: "Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required. Total reimbursement will not be appropriate if the court determines that the cost of the private education was unreasonable." 510 U.S. at 15–16. Thus, the final question for this Court is what relief is appropriate in this case.

The School District argues that the record and the evidence do not support an award of tuition in the sum of $90,375 or travel expenses in the sum of $11,686. The School District references testimony in the Hearing Transcript about a "breakdown sheet" marked as Exhibit 140 that was meant to support the charges at Kaizen. (HT, p. 188.) According to the School District, the "breakdown sheet" was not admitted into evidence at the hearing. (Doc. 25, p. 32). However, Exhibit 140 is part of the administrative record, and it supports the Hearing Examiner's award of tuition and travel expenses. Mrs. Steckelberg testified at the hearing that they are asking for a total of $102,061 for tuition and expenses as set forth in Exhibit 140. (HT, pp. 857-859.) The tuition ($90,375) and travel expenses ($11,686) awarded by the Hearing Examiner equal the $102,061 requested by the Steckelbergs. The Court finds that the record contains the evidence necessary to calculate the appropriate amount of reimbursement for tuition at the Kaizen Academy in the amount of $90,375.

The Steckelbergs submitted the Affidavit of Michael Steckelberg Regarding Travel Expenses to this Court. (Doc. 27-4.) This affidavit was meant to provide some clarification on the travel

19

expenses. (*Id.*) In evaluating a complaint under the IDEA, the district court "shall receive the record of the [state] administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The Court will consider the Affidavit of Michael Steckelberg in awarding travel expenses.

Mr. Steckelberg attests that their total travel expenses amounted to $11,221.52. He figured $100 per night for hotels. They often used timeshare points or hotel points for their stays. There is no information about how much the Steckelbergs paid for hotels after using their points. Accordingly, the Court will not award the cost for hotels, and it will deduct $ 2,000 ($100 per night for twenty nights) from the travel expenses in the amount of $11,221.52 set forth in the Affidavit of Michael Steckelberg. Thus, the total travel expenses awarded to Steckelbergs is $9,221.52.

**IT IS ORDERED:**

1. That the Hearing Examiner's Decision is affirmed;
2. That the School District shall reimburse the Steckelbergs $90,375 for tuition at Kaizen Academy and $9,221.52 for travel expenses.

Dated this 30th day of November, 2022.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK